**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| HARVEY BARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:11-cv-02029 |
| | ) | |
| ASSET ACCEPTANCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Asset Acceptance, LLC ("Asset" or "Defendant"), submits the following

Memorandum in support of its Motion for Summary Judgment on the claims against it by

Plaintiff Harvey Barker ("Barker" or "Plaintiff"). Plaintiff's lawsuit must be dismissed because

he lacks standing and/or is estopped from proceeding forward herein due to misrepresentations

about this lawsuit in a recently filed bankruptcy proceeding, and the undisputed record otherwise

reveals that he has no cognizable claim for relief. Because no genuine issues of material fact

exist, and because the uncontroverted evidence shows that Asset is entitled to judgment as a

matter of law, Defendant respectfully moves this Court to enter summary judgment in its favor

on Plaintiff's claims, and to dismiss this case with prejudice.

**NATURE OF THE MATTER BEFORE THE COURT**

This is a claim brought under the Fair Debt Collection Practices Act, 16 U.S.C. § 1692

("FDCPA") alleging that Defendant violated the FDCPA during certain collection contacts it

made arising out of Plaintiff's failure to pay delinquent debt.

**STATEMENT OF MATERIAL UNCONTROVERTED FACTS**

Pursuant to Local Rule 56.1(a) and for purposes of its Motion for Summary Judgment,

Defendant submits the following statement of material uncontroverted facts:

1.      At some point in the past, Plaintiff obtained a Target store card, made purchases with the card, and thus, incurred a debt owed to the issuer of the card.  (Exhibit A, Barker Deposition at    p. 19, lines 3-9).

2.      Plaintiff has no idea what he purchased with this card.  (Barker Depo. p. 19, lines 14-16).

3.      At some point thereafter, Plaintiff defaulted on the terms of this credit card by failing to make payments.  (Barker Depo. p. 20, lines 15-17).

4.      Although admitting that he made purchases, and failed to repay the creditor for those purchases, Mr. Barker does not intend to repay the debt.  (Barker Depo. p. 21, lines 1-17).

5.      At some point after the debt was charged off by the original creditor, it was transferred to Defendant Asset for collection.  (Barker Depo. p. 2, line 22 through p. 22, line 1).

6.      As part of its collection efforts, Asset allegedly contacted Mr. Barker at his place of employment.  (Barker Depo. pp. 23-24).

7.      Mr. Barker works for a debt collection agency and is himself an experienced debt collector and knowledgeable concerning the FDCPA.  (Barker Depo. pp. 13-16).

8.      Mr. Barker alleges that Defendant violated the FDCPA in three distinct ways: (1) by disclosing to a co-worker the details of his debt when Asset left a voice message at his work location, which he then allowed a co-worker to overhear; (2) by failing to meaningfully disclose the identity of the caller during the same voice message; (3) and by failing to cease and desist communications after being requested to do so.  (Barker Depo. p. 25, line 8 through p. 26, line 10).

OM 154466.1

9.      With respect to the voice message allegedly left at Mr. Barker's place of work, the message was left on his personal extension, and he was required to enter a personal pin number to access his voice mail account.  (Barker Depo. pp. 43-44).

10.      Despite working in close proximity to other debt collectors only 1 foot from his location, Mr. Barker chose to listen to his private voice messages on a speaker phone.  (Barker Depo. pp. 45-47).

11.      Despite being actively engaged in his own work, Mr. Barker's co-worker, John Ging, allegedly overheard a voice message allegedly left by Asset.  (Barker Depo. p. 47, lines 10-12; Exhibit B, John Ging Deposition, p. 13, lines 1-16).

12.      Asset was not attempting to communicate with Mr. Ging, and indeed, any messages sent to Mr. Barker were private messages intended for only Mr. Barker to hear. (Exhibit C, Declaration of Kenneth Proctor, ¶¶ 6-7).

13.      Although Mr. Barker claims that he was "humiliated" by the fact that his co-worker overhead this message concerning a debt he owed, Mr. Barker voluntarily disseminated information about this debt to others in at least the following ways:

a.      After Mr. Barker had made payment arrangements with Asset, he requested that Asset fax to him confirmation of the payment terms to a fax number at his place of employment where it was possible that others at his workplace could have seen the facsimile.  (Barker Depo. p. 59 through p. 62, line 7.).

b.      Mr. Barker chose to listen to his voice messages in close proximity to his co-workers even though he could have listened to the message privately through a handset or headset. (Barker Depo. p. 46, lines 18-25 ).

c.      Despite knowing that he worked in close proximity to other debt collectors, Mr. Barker chose to return a call to Asset from work, rather than waiting to return the call from the privacy of his home or elsewhere. (Barker Depo. p.51, lines 5-12).

d.      Mr. Barker voluntarily responded to Mr. Ging's inquiry about the short message left on his voicemail by disclosing to Mr. Ging that he owed a debt.  (Barker Depo. p. 47, lines 14-19).

OM 154466.1

e.    Mr. Barker chose to voluntarily discuss his debt with Target with Mr. Ging while he was on hold with an Asset collector, including bragging about how "Matt sued on it and won, so why can't I." (Barker Depo. pp. 53–58, line 10; Ging Depo. pp. 18-20; Proctor Decl. ¶ 8).

f.    During his voluntary conversation with Mr. Ging about his debt, Mr. Barker can be heard saying:

> I have this stupid ACA message on my voicemail this morning.  This is an attempt to collect – that's – I mean – Matt sued on it and won, so why can't I. Asset Acceptance on my Target card from three years ago.  [inaudible]  Oh, I don't know. I think it's 4 or 5 years.  They're not trying to sue me or anything, but.  [Inaudible]  Huh?  [Inaudible]  Yeah.  They offered me 50 percent off, but actually that's 524, that's still more than I want to pay, when actually I could get money from them.  I'll tell them I'll pay them 50 bucks right not and they can go away. It's better than getting a lawsuit isn't it?  (Proctor Decl. ¶ 8).[1]

14.    The voice message Mr. Barker claims was left on his work number states: "[Beep] Message 24 . . . Please contact [beep] about a personal business matter at 1-877-692-6188.  This is an attempt to collect a debt and any information obtained will be used for that purpose.  Thank you."[2]  (Proctor Decl. ¶ 9; Exhibit D, Plaintiff's Responses to Interrogatories, # 8).

15.    Mr. Barker could not say whether he recognized the digitized voice on the recording.  (Barker Depo. p. 67, lines 21-24).

16.    Mr. Barker could not say whether his employer's voice message system begins replay of its messages with the number of messages or the time and date.  (Barker Depo. p. 66).

17.    Asset has reviewed the message and it is not an authorized automated message left by Asset, nor does the digitized voice sound like a digitized voice used by Asset in its messages.  (Proctor Decl. ¶ 11).

---

[1] The parties have stipulated to the admissibility of the recorded conversations.  If Plaintiff challenges the admissibility of the contents of the conversation via the declaration above, or the Court requests to have the original recording, Defendant will make the recorded conversation available to the Court.

[2] As set forth below, Defendant believes that the copied recording at issue is inadmissible, but Defendant can make the recording produced by Plaintiff available to the Court upon request.

OM 154466.1

18.     While the words "message 24" are consistent with the voice message system noting the number of messages on the system, the tone of the voice is the same as the body of the message allegedly from Asset.  (Proctor Decl. ¶ 12).

19.     There are also inexplicable gaps in the message.  (Proctor Decl. ¶ 13).

20.     Plaintiff denies altering the message.  (Barker Depo. at p. 68).

21.     The authorized message from Asset that would have been left on a debtor's voice mail, which was designed and approved by the leading trade organization in the debt collection industry, the ACA, is as follows:

> This message is for <<name>>.  By continuing to listen you are acknowledging that you are <<name>>.  If you are not <<name>>, please hang up.  If you are, <<name>> please continue to listen, but not in the presence of others as it contains personal information.  This is <<alias>> a debt collector with Asset Acceptance, please contact me about a personal business matter at <<toll free number>>.  This is an attempt to collect a debt, and any information obtained will be used for that purpose.  Thank you.

(Proctor Decl. ¶ 14).

22.     If Plaintiff received the message from Asset he claims, and not the authorized message from Asset set forth immediately above, then the message was somehow altered or changed either through human intervention beyond the control of Asset, or through some sort of glitch either in Asset's system or Plaintiff's employer's systems.  (Proctor Decl., ¶ 15).

23.     If an error occurred in such a message being received by Plaintiff, such error occurred despite Asset taking reasonable measures to ensure that such a message would not be received.  Specifically, Asset prerecords its messages to ensure they track with the script above, which allows a recipient protection against disclosures to third parties.  Asset has not previously encountered or contemplated any sort of computer or system glitch that would selectively only play portions of its approved messages.  (Proctor Decl., ¶ 16).

OM 154466.1

24.    Asset has no idea how the message could have been changed or altered to have been received in the manner Plaintiff alleges, but such message was not intended or authorized by Asset.  (Proctor Decl. ¶ 17).

25.    Plaintiff admitted that had he received Asset's message as described above, he would have known not to listen to it in the presence of others and to instead listen to it in private. (Barker Depo. p. 41, line 15 through p. 42, line 6).

26.    Plaintiff disclosed in discovery a copy of the alleged recording of the message he claims to have received at his work number by having a staff member with his attorneys' office record the alleged message over the phone using an analog dictaphone cassette tape.  This process occurred in December 2010.  (Barker Depo. p. 34; p. 63, line 19 through p. 64 line 10).

27.    Plaintiff is "99%" certain he did not retain the original recording, nor did Plaintiff make any efforts to preserve the recording.  (Barker Depo. at pp. 64-65).

28.    The original voice message has not been provided to Defendant.  (Proctor Decl. ¶ 10).

29.    Based on the truncated content and other questionable attributes, Defendant questions the authenticity of the recording at least in so much as the recording is alleged to be one left by Asset.  (Proctor Decl. ¶ 18).

30.    Plaintiff has stated that any and all evidence in support of his claim that Defendant failed to cease and desist calls to his place of employment would be contained in Asset Acceptance's records.   (Barker Depo. p. 70, lines 1-8; Plaintiff's Responses to Interrogatories, # 9).

31.    Asset's records do not show that Plaintiff ever requested that Asset cease and desist calls to Plaintiff's place of employment.  (Proctor Decl. ¶ 19).

OM 154466.1

32.     On June 17, 2011, Plaintiff filed for bankruptcy protection in the United States Bankruptcy Court for District of Kansas.  (Exhibit E, Docket Sheet).

33.     Plaintiff did not list the instant lawsuit as an asset in his bankruptcy Schedule B, or otherwise indicate to the Court or Trustee that the present lawsuit existed. (Exhibit F, Petition and Schedules).

34.     Schedule B – Personal Property, Question 21, requests Mr. Barker to list: "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each."  To this query, Plaintiff listed nothing.  (Exhibit F, p. 9).

35.     In the Statement of Financial Affairs, the form requests Mr. Barker to "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."   Mr. Barker checked "None." (Exhibit F, p. 29).

36.     Mr. Barker does not list Asset as either a secured or unsecured creditor, but does list Target National Bank as a creditor with an "unknown" credit card claim.  (Exhibit F, pp. 13-20).

37.     Mr. Barker is represented by counsel in his bankruptcy proceedings.  (Exhibit E).

## QUESTIONS PRESENTED

1.     Whether Plaintiff's claims are barred because of the doctrines of standing or judicial estoppel because he failed to disclose the existence of this lawsuit in his bankruptcy proceedings.

2.     Whether Plaintiff can meet his burden of proof in showing sufficient admissible evidence to create a genuine issue of material fact as to any violation of the FDCPA by Defendant, including whether Defendant disclosed to a co-worker the details of his debt by

7

leaving a voice message at his work location; by failing to meaningfully disclose the identity of the caller during the same voice message; and by failing to cease and desist communications after being requested to do so.

3.    Whether Plaintiff can refute Defendant's evidence supporting that any alleged violation of the FDCPA is subject to a bona fide error defense.

## ARGUMENT

### I.    Standard For A Motion for Summary Judgment

No longer a "disfavored procedural shortcut," summary judgment is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (internal quotations omitted).  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitrus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp., 477 U.S. at 322.  The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Id. at 323; Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial.  Applied Genetics Int'l, Inc.

v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on its pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51.

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## II.     Plaintiff Lacks Standing To Bring The Claims Herein Because He Has Filed Bankruptcy

When a party files a bankruptcy petition, that party's legal and equitable interests are transferred to the bankruptcy estate. 11 U.S.C. 541(a)(1); Mixon v. Anderson, 816 F.2d 1222, 1225 (8th Cir. 1987). Thus, all causes of action belonging to the debtor at the time of the bankruptcy proceeding are included in the bankruptcy estate's property.  Id.  Because those causes of action are included in the estate, a plaintiff may lack standing to bring a claim if that claim is not disclosed in the bankruptcy petition.  Zanders v. Armstrong Wood Prods., 2008 U.S. Dist. LEXIS 8455, *6 (S.D. Iowa Feb. 4, 2008).  Property that is not correctly scheduled remains property of the estate forever, until administered or formally abandoned by the trustee.  Id. at *7.

Thus, in the case of an omitted cause of action, the trustee is the real party interest and the correct defense is one of standing, i.e., the action is not being prosecuted by the real party in

interest which is the trustee, not the debtor.  Id.; In re Carolyn Denise Upshur, 317 B.R. 446, 451-52 (Bankr. N.D. Ga. 2004); see also 11 U.S.C. §§ 554(a)-(d) (noting that all three forms of "abandonment" require notice and hearing); In re Wiesner, 267 B.R. 32 (Bankr. D. Mass. 2001) (noting that intent to abandon asset must be clear and unequivocal); In re Phoenix Petroleum Co., 278 B.R. 385 (Bankr. E.D. Pa. 2001) (noting that property a trustee fails to administer is abandoned back to the debtor when the case is closed, but only with respect to property of the estate which has been "scheduled" by the debtor); In Re Hat, 363 B.R. 123 (Bankr. E.D. Cal. 2007) (holding that there is no informal abandonment  of property of the bankruptcy estate); In re Kopp, 374 B.R. 842 (Bankr. D. Kan. 2007) (noting that trustee must know that property exists before it can be abandoned).  Moreover, the trustee's exclusive standing exists even when the debtor fails to schedule the claim as the Plaintiff has done here.  West v. H&R Block Tax Services, Inc., 2003 U.S. Dist. LEXIS 22778 (N.D. Ill., Dec. 15, 2003); Tuttle v. Equifax Check Services, Inc., 1997 U.S. Dist. LEXIS 21886 (D. Conn., June 17, 1997); In re Solt, 425 B.R. 263 (W.D. Va. 2010).

Here, Plaintiff lacks standing to pursue his claims in this lawsuit as his claims remain the property of the bankruptcy estate.  This lawsuit was filed on January 19, 2011 (Dock. # 1). Subsequently, Plaintiff filed his Chapter 13 bankruptcy claim on June 17, 2011. (SOF ¶ 32). Plaintiff did not list this lawsuit on his bankruptcy schedules as required by the Bankruptcy Code.  (SOF ¶¶ 33-35).  Thus, the Trustee – the owner of this claim – is unaware of this lawsuit. As Plaintiff has no standing to continue with this lawsuit, his claim should be dismissed.

### III.    Plaintiff's Failure To Schedule This Lawsuit In Bankruptcy Was Deliberate, And He Should Be Judicially Estopped From Maintaining Any Claim Against Defendant

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  New

Hampshire v. Maine, 532 U.S. 742, 749 (2001).  The purpose is to "preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002).  In the bankruptcy context, the rationale for these estoppel decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all their assets. Thus, a number of courts have invoked judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim in a separate civil proceeding.  Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157-58 (10th Cir. 2007) (collecting and discussing cases applying judicial estoppel in cases where civil plaintiff failed to list lawsuit in bankruptcy schedules); Negron v. Weiss, 2006 U.S. Dist. LEXIS 69906, *8-9 (E.D.N.Y., Sept. 27, 2006) (same).

Although equitable in nature and not subject to rigid criterion, the United States Supreme Court has identified three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  Id. at 750-51. Here, all three considerations are obvious.

Plaintiff did not list the instant lawsuit as an asset or a financial affair in the bankruptcy petition.  (SOF ¶¶ 33-35).  Indeed, Plaintiff has made unequivocal representations to the bankruptcy court that he is not a party to any lawsuit.  Id.  Clearly then, Plaintiff's position in bankruptcy are inconsistent with his positions in this matter.  Pursuing a cause of action not

OM 154466.1

disclosed as an asset in a bankruptcy filing creates an inconsistency sufficient to support judicial estoppel as the debtor has already asserted the position that no such claim exists. Toma v. Gen. Revenue Corp., 2008 U.S. Dist. LEXIS 7856, 11-14 (E.D. Mich. February 1, 2008); see also, Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006) (agreeing with "all six appellate courts that have . . . hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends.").

Likewise, the second and third considerations as articulated by the Supreme Court are met because Plaintiff has been successful in defrauding the bankruptcy court by failing to disclose this contingent asset in his schedules or otherwise. See Turner v. Southwestern Bell Tel. L.P., 2006 U.S. Dist. LEXIS 99395 (E.D. Mo. 2006) (holding that judicial estoppel should be applied when there is intentional or deliberate manipulation which can be inferred from the record). Moreover, Plaintiff clearly gains an unfair advantage by, on the one hand, pursuing this matter for damages against Asset, but then failing to list for his creditors this lawsuit as a contingent asset. Such chicanery robs the Trustee and the Bankruptcy Court from their duties to fairly administer the estate. Even more galling, Asset, as the owner of the underlying debt owed by Mr. Barker that gave rise to the collection calls, is not even listed as a creditor in the schedules!

Plaintiff may argue that his failure to list this lawsuit in his bankruptcy proceeding was an innocent omission. This argument should fall on deaf ears. Plaintiff has experienced counsel in both this and his bankruptcy matters. Mr. Barker is also able to plainly read the questions to which he provided sworn responses. Mr. Barker was well aware of this lawsuit at the time he filed bankruptcy, and yet he chose not to list this lawsuit. He apparently remembered that he

OM 154466.1

owed a debt to Target National Bank as that debt is listed in his schedules.  To say that he innocently forgot to list Asset as a creditor, or this lawsuit as an asset, defies credulity.

Moreover, several courts, including the Tenth Circuit, have addressed this issue and concluded that "failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor had no knowledge of the claims or no motive to conceal the claims." Coffaro v. Crespo, 721 F. Supp. 2d 141, 146 (E.D. NY 2010); see also Galin v. IRS, 563 F.Supp.2d 332, 340 (D. Conn. 2008).  Indeed, the Tenth Circuit, in Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157-58 (10th Cir. 2007), rejected claims of lack of sophistication and attorney error in failing to disclose an existing claim.  The court noted that plaintiff had little difficulty expressing the full nature of his financial condition to the bankruptcy court, but nonetheless, "had a motive to sweep his personal injury action 'under the rug' so he could obtain a discharge free and clear of his creditors."  Id.  As such, the Tenth Circuit affirmed application of judicial estoppel to bar the undisclosed civil claim.

Here, Mr. Barker was clearly aware of this lawsuit at the time he filed bankruptcy, and he had every motivation to conceal this case from the bankruptcy court.  By doing so, he could shield any recovery gained in these proceedings from his creditors (including, ironically, Asset).  "The doctrine of judicial estoppel serves to offset such motive, inducing debtors to be completely truthful in their bankruptcy disclosures."  Id.

Specific to the facts of this case, judicial estoppel has been applied to bar FDCPA lawsuits in various district courts when a finding of non-disclosure of the lawsuit is found in either a Chapter 7 or 13 bankruptcy proceeding.  In Kee v. Evergreen Professional Recoveries, Inc., 2009 U.S. Dist. LEXIS 73841 (W.D. Wash., Aug. 19. 2009), for instance, the plaintiff filed an FDCPA suit against a debt collector a mere 24 days after filing a bankruptcy petition.

Plaintiff failed to list the FDCPA suit in the petition.  Finding that the plaintiff knew about her FDCPA cause of action when she filed her bankruptcy petition but failed to disclose it, the court applied judicial estoppel and precluded her from proceeding with the FDCPA suit.  Id. at *8-10. Specifically, the court found that the plaintiff would derive an unfair advantage by protecting her claim from her creditors by failing to disclose it.  Id. at *8-9. See also Allers-Petrus v. Columbia Recovery Group, LLC, 2009 U.S. Dist. LEXIS 24265 (W.D. Wash., Mar. 24, 2009) (judicial estoppel applied to FDCPA suit even while chapter 13 case was still pending because plaintiff failed to disclose lawsuit in her initial bankruptcy schedules and subsequent amendments made to the schedules after summary judgment motion was filed did not obviate need to apply judicial estoppel doctrine); Montalvo v. Asset Acceptance, LLC, 09-cv-3948 (E.D. NY 2011) (unpublished).

In short, Plaintiff failed to disclose this suit against Asset in his bankruptcy schedules notwithstanding the fact that this case had been pending for nearly six months at the time of the filing of the bankruptcy petition. It is evident that Plaintiff purposely omitted the instant action from his bankruptcy schedules. Plaintiff cannot now realize on the very asset that he chose to conceal from his creditors in bankruptcy. Thus, judicial estoppel must be applied to bar Plaintiff from asserting his present, inconsistent claim.

**IV.     Plaintiff's Claims Of FDCPA Violations All Fail On The Merits**

Even assuming that Plaintiff has standing and is not judicially estopped from bringing the claims in this lawsuit, the undisputed record reveals that Plaintiff's claims wholly lack merit. Plaintiff advances that Defendant violated the FDCPA in three distinct ways: (1) by disclosing to a co-worker the details of his debt when Asset allegedly left a voice message at his work location, which he then allowed a co-worker to overhear; (2) by failing to meaningfully disclose

the identity of the caller during the same voice message; (3) and by failing to cease and desist communications after being requested to do so.  Each will be discussed below.

> **A.      The Undisputed Record Reveals that Defendant did not Disclose Information Concerning the Debt to any Third Parties, Rather Plaintiff Voluntarily Disclosed and Discussed His Debt and Collection Issues with Co-Workers.**

Plaintiff claims that Defendant disclosed information concerning his debt to a third party in violation of 15 U.S.C. § 1692(c)(b) when Plaintiff allowed a co-worker to overhear a voice message allegedly left for him at his work number by Asset.  The claim fails for numerous reasons.

As a threshold matter, Plaintiff's allegations do not equate to a violation of Section 1692(c)(b), which states that a debt collector "may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney or the creditor, or the attorney of the debt collector."  Asset was not attempting to communicate with Plaintiff's co-worker, but was communicating only with Mr. Barker.  (SOF ¶ 12).  The fact that Mr. Barker allowed his co-worker, Mr. Ging, to listen to the message does not change the nature of the communication with Plaintiff.  For that reason alone, the claim fails.

Moreover, Plaintiff cannot claim a third party disclosure in violation of the FDCPA when Plaintiff himself took no actions to protect communications with Asset from others, and in fact, **Plaintiff purposefully communicated with third parties about this debt**.  Specifically, Mr. Barker chose to listen to the voice message at issue herein in close proximity to his co-workers even though he could have listened to the message privately through a handset or headset. (SOF ¶ 10).  Mr. Barker chose to return a call to Asset from work, rather than waiting to return the call from the privacy of his home or elsewhere.  (SOF ¶ 13).  Mr. Barker chose to voluntarily discuss his debt with his co-worker, Mr. Ging, both while he was on hold with an Asset collector and

after he heard the alleged voice message.  (SOF ¶ 13).  Finally, after Mr. Barker had made payment arrangements with Asset, he requested that Asset fax to him confirmation of the payment terms to a fax number at his place of employment where it was possible that others at his workplace could have seen the facsimile.  (SOF ¶ 13).  Under these facts, it was not Asset who communicated information about Mr. Barker's debt to third parties, but rather Mr. Barker who voluntarily or negligently disclosed such information to others.

Even if Mr. Barker had not himself voluntarily disclosed information about his debt to others, inadvertent eavesdropping by a co-worker of information concerning a debt is not a per se violation of the FDCPA.  Indeed, Section 1692b(b) "was intended to protect against deliberate disclosures to third parties as a method of embarrassing the consumer, not to protect against the risk of inadvertent disclosure that could occur if another person unintentionally overheard the messages left on [plaintiff's] answering machine." Hill v. Navy Federal Credit Union, 2010 WL 2764698 * 5 (quoting Mostiller v. Chase Asset Recovery Corp., W.D. NY, Docket No. 09-CV-218A (January 22, 2010)).  To survive summary judgment, Plaintiff must prove that Asset "knew or had reason to know that other persons besides the Plaintiff might hear the messages." Id.; Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50104 (Dec. 13, 1988) ("[a] debt collector does not violate this provision when an eavesdropper overhears a conversation with the consumer, unless the debt collector has reason to anticipate the conversation will be overheard.").  Nothing in the record reveals any sort of knowledge, or reason to have knowledge, on the part of Asset that others may be allowed to eavesdrop on any messages left for Mr. Barker at his private work number.

Finally, and as discussed in more detail in Section IV.B.2 below, any intended message left for Plaintiff by Asset would have included warnings that the message should only be heard in

OM 154466.1

private and out of the hearing of others.  (SOF ¶ 21).  If a message was received that failed to include these warnings, it was done through some inadvertent glitch and subject to a bona fide error defense.  Mr. Barker confirmed that if he had heard the warnings as issued in Asset's approved voice message, he would have listened to the recorded message in private, and would not have allowed Mr. Ging to hear the message.  (SOF ¶ 25).

For all of these reasons, Plaintiff's claim that Asset violated the FDCPA by communicating with third parties lacks any support in the record and should be dismissed.

**B.     Asset Meaningfully Disclosed Its Identity in all Communications with Plaintiff.**

Plaintiff cannot meet its burden to show a genuine issue of material fact as to whether Defendant violated the FDCPA by failing to meaningfully disclose its identity during a voice message left for Plaintiff at his work number.  The recording that forms the basis for the claim has been destroyed, thus leaving Defendant bereft of a means to disprove its legitimacy.  The evidence of the message is spoliated and any alleged copies of this evidence are simply inadmissible.  Thus, the claim falters for lack of evidence.  Moreover, even if the message was left as Plaintiff claims, it is subject to a bona fide error defense.

**1.     Plaintiff spoliated the evidence of the alleged violation by erasing the voice message at issue and the copied version of the recording is inadmissible as not the best evidence of the communication.**

Plaintiff's claim that Asset failed to meaningfully disclose its identity during one voice message left for Plaintiff at his place of work is premised solely upon a tape recording Plaintiff's counsel allegedly made of that voice message.  That recording was created, apparently, by Plaintiff playing the voice message over the phone to Plaintiff's counsel's paralegal who recorded the message using an analog dictaphone tape.  (SOF ¶ 26).  All of this occurred in December 2010, one month before Plaintiff filed this lawsuit.  Id.

17

To be blunt, the tape is highly suspicious.  First, the recorded voice on the message is not a digitized voice used by Asset (Mr. Barker could not say whether he recognized the voice). (SOF ¶¶ 15, 17).  The message contains selected portions of an authorized message from Asset, but oddly leaves out sections of the message that, because of their selective absence, make the message seem non-FDCPA compliant.  (SOF ¶¶ 14-21).  Certainly, Mr. Barker, a long time debt collector, is well familiar with "ACA approved messages" and also has experience with leaving such messages as part of his work.  In addition, the message begins with the words "message 24" which is consistent with a statement made by the recipient's voice message system, but the voice is the same through the entire body of the message.  (SOF ¶ 18).  There are also inexplicable gaps and beeps in the message.  (SOF ¶ 19).

To be clear, Plaintiff denies altering the message.  (SOF ¶ 20).  Beyond the suspicions noted above, Defendant is unable to further investigate the veracity of the alleged voice message because Defendant did not retain the original digitized recording on his employer's work system, nor did he make any efforts to preserve the original recording.  (SOF ¶¶ 27-28).

Plaintiff's failure to preserve the recording is germane to this Motion in two ways.  First, because the original, digital version of the recording has been destroyed, the best evidence rule prohibits use of an analog copy of the recording allegedly created by joint effort of Plaintiff and Plaintiff's counsel.  The "best evidence" rule – requiring production of an original "recording" to prove its contents – is embodied by Federal Rule of Evidence 1002.  Federal Rule of Evidence 1003 prohibits the use of duplicates if "a genuine question is raised as to the authenticity of the original."  Courts have found that when the authenticity of a recording is at the heart of the dispute, the original recording must be tendered under the best evidence rule.  Cartier v. Jackson, 59 F.3d 1046, 1049 (10th Cir. 1995).

Here, the veracity of the alleged voice message received by Plaintiff is very much at issue.  Defendant has never had access to the original recording to even know whether the duplicate tendered by Plaintiff's counsel is accurate or unaltered.  The message is certainly **not** a message Asset authorized to be sent to debtors.  (SOF ¶ 17).  Clearly, without any admissible evidence of the alleged transgression, Plaintiff's FDCPA claim fails for lack of evidence.

Second, evidence of the alleged recording is inadmissible for a second, related reason.  Plaintiff's failure to preserve the original of the recorded message represents spoliation of evidence.  Plaintiff was under a duty to preserve evidence related to his case as soon as he contemplated litigation.  103 Investors I, L.P. v. Square D Co., 470 F.3d 985, 988-89 (10th Cir. 2006).  Plaintiff stated that he created the analog tape of the recording by playing it to his attorney in December 2010.  From this testimony two points are evident: (1) Mr. Barker had possession of the original message allegedly left on his work voice mail system in December 2010; (2) Mr. Barker had retained counsel and contemplated litigation at that time.  Clearly, Mr. Barker had an obligation to preserve the recording and should have been so advised by his counsel.  Such conduct represents willful destruction of relevant evidence in bad faith.

If this matter goes to trial, Defendant submits that it would be entitled to an adverse inference instruction to the jury – stating that the original recording had been altered to make it appear that the message violated the FDCPA –  as a sanction for Plaintiff's destruction of this vital evidence.  Id.  But, even at the summary judgment stage, Defendant is entitled to at least the lesser sanction of exclusion of all evidence of the alleged recording.  Id.;  Henning v. Union Pacific R. Co., 530 F.3d 1206, 1220 (10th Cir. 2008).  Such exclusion eviscerates any evidence in support of the alleged violation of the FDCPA.  Summary judgment must be granted.

**2.**     **If the voice message allegedly received by Plaintiff was left by Asset, the message was somehow altered and received in error and otherwise subject to a bona fide error defense.**

Assuming that for purposes of considering this summary judgment Motion this Court accepts into evidence the recording Plaintiff has proffered, Plaintiff's claims must nonetheless be dismissed because any violation occurring because of the receipt of the alleged message is subject to the bona fide error defense under the FDCPA.   The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA.   Johnson v. Riddle, 443 F.3d 723, 727 (10th Cir. 2006).   Specifically, the bona fide error provision provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Id. (quoting 15 U.S.C. § 1692k(c)).   Accordingly, an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that an alleged violation was (1) unintentional; (2) a bona fide error; and (3) made despite the maintenance of procedures reasonably adapted to avoid the error.   Johnson, 443 F.3d at 727-28.   Here, all elements are met.

The record clearly supports the application of the bona fide error defense.   As set forth in the Declaration of Kenneth Proctor, Asset carefully pre-records any messages to ensure compliance with the FDCPA and the privacy of the debtor.   Asset's authorized message left with debtors on voice message systems is as follows:

> This message is for <<name>>.   By continuing to listen you are acknowledging that you are <<name>>.   If you are not <<name>>, please hang up.   If you are, <<name>> please continue to listen, but not in the presence of others as it contains personal information.   This is <<alias>> a debt collector with Asset Acceptance, please contact me about a personal business matter at <<toll free number>>.   This is an attempt to collect a debt, and any information obtained will be used for that purpose.   Thank you.

OM 154466.1

(SOF ¶ 21).  The message Plaintiff claims he received contains portions of the message above, but curiously leaves out the important warnings and protections in the message.  If Plaintiff received the message he claims, then the message was somehow altered or changed either through human intervention beyond the control of Asset, or through some sort of glitch either in Asset's system or Plaintiff's employer's voice mail system.  (SOF ¶ 22).  If the problem was the product of a computer/phone message system glitch, it resulted in an error occurring despite Asset taking reasonable measures to ensure that such a message would not be received.  (SOF ¶ 23).  Specifically, Asset prerecords its messages to ensure they track with the script above, which allows a recipient protection against disclosures to third parties.  Id.  Asset has no idea how the message could have been changed or altered to have been received in the manner Plaintiff alleges, but such message was not intended or authorized by Asset.  (SOF ¶ 24).

In short, the receipt of the alleged message by Plaintiff was an unintentional error that somehow occurred despite Defendant taking reasonable steps to ensure that all its messages comply with the FDCPA (including the meaningful disclosure of the identity of the message leaver).  Plaintiff has taken no discovery, nor produced any evidence, to dispute this position.

### C.    Plaintiff has Produced No Evidence that he Ever Requested that Defendant Cease and Desist Contact.

Plaintiff's third and final claim for FDCPA violation claims that Plaintiff requested that Defendant cease and desist contacts with him at his place of employment.  Plaintiff testified in both his interrogatory response and his deposition that any and all evidence in support of his claim that Defendant failed to cease and desist calls to his place of employment would be contained in Asset Acceptance's records.  (SOF ¶ 30).  Asset's records do not show that Plaintiff ever requested that Asset cease and desist calls to Plaintiff's place of employment.  (SOF ¶ 31).

OM 154466.1

As such, Plaintiff cannot demonstrate any request to cease and desist communications with him, let alone that Defendant dishonored the request.  Summary judgment must be granted.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that its Motion for Summary Judgment be granted, that this suit be dismissed with prejudice, and the Court grant such other and further relief as it deems just and proper.

DATED this 15th day of September, 2011.

ASSET ACCEPTANCE, LLC, Defendant

By: s/ Joshua C. Dickinson
    Joshua C. Dickinson, Bar Number 20632
    Attorneys for Defendant
    Spencer Fane Britt & Browne LLP
    1000 Walnut, Suite 1400
    Kansas City, MO 64106
    Telephone: (816) 474-8100
    Facsimile: (816) 474-3216
    Email: jdickinson@spencerfane.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Kansas on the 15th day of September, 2011, with notice of case activity generated and sent to all counsel of record.

s/ Joshua C. Dickinson
Attorney for Defendant

OM 154466.1