## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **HARVEY BARKER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:11-cv-02029-JAR |
| | ) | |
| **ASSET ACCEPTANCE, LLC**, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff Harvey Barker filed this action against Defendant Asset Acceptance, LLC for

violations of the Fair Debt Collection Practices Act ("FDCPA"), seeking statutory and emotional

distress damages.  This matter currently comes before the Court on Defendant's Motion for

Summary Judgment (Doc. 21).  Defendant seeks summary judgment arguing that Plaintiff lacks

standing to prosecute this claim, should be judicially estopped from proceeding, and cannot

succeed on the merits of his claim.  The Court held an evidentiary hearing on the judicial

estoppel issue on June 1, 2012.   The Court has thoroughly considered the parties' briefs and the

evidence presented at the June 1, 2012 hearing and is now prepared to rule.  As explained more

fully below, the Court grants Defendant's motion because, based on the uncontroverted facts, no

reasonable jury could come to any conclusion other than that Plaintiff intentionally manipulated

the judicial system to gain an unfair advantage over his creditors by failing to include this

lawsuit on his bankruptcy schedules and therefore application of judicial estoppel is appropriate.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, courts view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party

---

[1]Fed. R. Civ. P. 56(c).

[2]*Spalding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5]*Spalding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

[7]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spalding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12] "

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  If no reasonable juror could return a verdict for the non-moving party, trial is not needed and summary judgment is appropriate.[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

---

[8]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(c)(4).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*See id.* at 323.

[15]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## II.        Uncontroverted Facts

For the purposes of Defendant's Motion for Summary Judgment, the following material facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff.

Plaintiff acquired debt on a Target National Bank credit card.  Target National Bank transferred Plaintiff's debt to Defendant for collection.  Plaintiff filed this lawsuit alleging violations of the FDCPA on January 19, 2011, for Defendant's conduct in attempting to collect on that debt.  Plaintiff is represented by counsel J. Mark Meinhardt in this action.  On June 17, 2011, Plaintiff filed for bankruptcy in the United States Bankruptcy Court for the District of Kansas.  Plaintiff is represented by separate counsel in his bankruptcy proceedings.  Plaintiff failed to list the instant suit as an asset in his bankruptcy Schedule B or otherwise indicate to the court or the trustee that the present lawsuit existed.  Schedule B – Personal Property, Question 21, requested Plaintiff to list; "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and right setoff claims.  Give estimated value of each."[16]  To this query, Plaintiff listed nothing.  In the State of Financial Affairs, the form requested Plaintiff to "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."[17]  Plaintiff checked "None."  Additionally, Plaintiff did not list Defendant as either a secured or unsecured creditor, but did list Target National Bank as a creditor with an unknown credit card claim.

Defendant filed its motion for summary judgment on September 15, 2011.  After

---

[16]Doc. 22, Ex. 7 at 9.

[17]*Id.* at 29.

requesting an extension of time to respond, Plaintiff filed his response on October 12, 2011.

Attached to the response was a letter from Plaintiff's attorney, Mr. Meinhardt, to the bankruptcy

trustee notifying the trustee of the pending FDCPA claim.  The letter was dated October 12,

2011.  This action has since been added to the bankruptcy schedules and the bankruptcy court

approved Plaintiff's application to employ Mr. Meinhardt as counsel in this matter.

## III.    Discussion

Defendant asks that the Court grant summary judgment on three separate grounds: (1) the

Plaintiff lacks standing to prosecute this action, (2) judicial estoppel bars Plaintiff from

proceeding in this action, and (3) the undisputed record demonstrates that Plaintiff cannot

succeed on the merits of his claim.

### A.    Standing

Defendant first argues that the Court should dismiss this case because Plaintiff lacks

standing.  Plaintiff filed this action against Defendant on January 19, 2011.  Plaintiff filed for

bankruptcy under Chapter 13 on June 17, 2011.  Defendant argues that Plaintiff is not the real

party in interest because this action belongs to the bankruptcy estate and therefore the

bankruptcy trustee, and not Plaintiff, has standing to prosecute the action.

Federal Rule of Civil Procedure 17(a) requires that "[e]very action shall be prosecuted in

the name of the real party in interest."  Once a party files for bankruptcy, the claims of that party

become the property of the bankruptcy estate.[18]  A Chapter 13 debtor, however, has standing to

file and prosecute a complaint on behalf of the bankruptcy estate as a debtor in possession.[19]

---

[18]*Riggs v. Aetna Life Ins. Co.*, 188 F. App'x 659, 663 (10th Cir. 2006).

[19]*Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008).

Here, Plaintiff's FDCPA claim has been added to the bankruptcy schedules, and the bankruptcy court, after giving opportunity for objections, granted an application to employ Mr. Meinhardt as Plaintiff's attorney for this action.  Thus, in his capacity as a Chapter 13 bankruptcy debtor rather than in his individual capacity, Plaintiff has standing to prosecute this claim.

**B.     Judicial Estoppel**

Defendant next argues that the Court should judicially estop Plaintiff from proceeding in this case because Plaintiff failed to include this lawsuit in his bankruptcy schedules or otherwise notify the bankruptcy court or the trustee about this lawsuit.  Judicial estoppel is an equitable doctrine, which protects "'the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"[20]  As an equitable doctrine, the Court must consider all of the equities of the case.[21]  As a result, the circumstances under which a court might invoke judicial estoppel will vary.[22]  But typically, as the Tenth Circuit outlined in *Eastman v. Union Pacific Railroad*, three factors "inform the decision whether to apply the doctrine in a particular case."[23]  First, a party's later position must be clearly inconsistent with its previous position.[24]  Second, a court should determine whether the party "succeeded in persuading a court to accept that party's former position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that

---

[20]*Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007)

[21]*See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

[22]*Id.*

[23]*Eastman*, 493 F.3d at 1156.

[24]*Id.*

either the first or the second court was misled.'"[25]   Third, the court should determine whether the

party "would gain an unfair advantage in the litigation if not estopped."[26]   While these factors

may inform the Courts' decision, they are not "inflexible prerequisites or an exhaustive formula

for determining the applicability of judicial estoppel.  Additional considerations may inform the

doctrine's application in specific factual contexts."[27]

 In a number of cases, the Tenth Circuit has addressed the use of judicial estoppel against

a plaintiff who failed to include a lawsuit as an asset on the bankruptcy schedules.[28]   The Tenth

Circuit has consistently affirmed district courts use of judicial estoppel when the bankruptcy

proceedings have closed.[29]   In those cases, the Court has emphasized that even though the

bankruptcy could be reopened to allow the plaintiff to amend the schedules and avoid the

inconsistent positions and unfair advantage, judicial estoppel was still appropriate: "Allowing

[the party] to 'back up' and benefit from the reopening of his bankruptcy would 'suggest[] that a

debtor should consider disclosing potential assets only if he is caught concealing them.  This so-

called remedy would only diminish the necessary incentive to provide the bankruptcy court with

a truthful disclosure of the debtor's assets.'"[30]

---

[25]*Id.*

[26]*Id.*

[27]*New Hampshire,* 532 U.S. at 751.

[28]*See, e.g.*, *Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 106–08 (10th Cir. 2009); *Adese v. DCT, Inc.*, 280 F. App'x 691, 694–97 (10th Cir. 2008); *Eastman*, 493 F.3d 1157–60.

[29]*See, e.g.*, *Paup*, 327 F. App'x at 106–08; *Adese*, 280 F. App'x at 694–97; *Eastman*, 493 F.3d at 1157–60.

[30]*Eastman v. Union Pacific R.R.*, 493 F.3d 1151, 1160 (10th Cir. 2007) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)).  *Burnes* cites *Traylor v. Gene Evan Ford, LLC*, 185 F. Supp 2d 1388 (N.D. Ga. 2002), and *Scoggins v. Arrown Trucking Co.*, 92 F. Supp. 2d 1372 (S.D. Ga. 2000), in support of this statement.  Both *Traylor* and *Scoggins* are analogous to the instant case and, as discussed below, support use of judicial estoppel here.

In *Higgins v. Potter*, the Tenth Circuit affirmed application of the doctrine when the bankruptcy proceedings were still underway but the bankruptcy court had already approved the bankruptcy plan based on the plaintiff's misrepresentation about her assets.[31]   The court explained that the district court had examined the three factors outlined in *Eastman* and had found that the plaintiff's "failure to disclose her discrimination case on her bankruptcy schedule put her in a position to reap a recovery from her lawsuit, giving her an unfair advantage over her creditors."[32]   Further, the plaintiff "corrected her omission only after defendant filed his motion for summary judgment based on judicial estoppel, without ever presenting any evidence to show that the omission was inadvertent."[33]

Here, Plaintiff also put himself in a position to gain an unfair advantage over his creditors by failing to include this lawsuit on the bankruptcy schedules.  Like the plaintiff in *Higgins*, Plaintiff only amended his schedules in response to the motion for summary judgment based on judicial estoppel.  But one key difference between this case and *Higgins* is that here Plaintiff's bankruptcy plan had not yet been approved when Defendant filed for summary judgment based on judicial estoppel.  Thus, Plaintiff was able to amend his schedules before the plan was confirmed.  This distinction is important because it touches on the second factor that courts typically consider for judicial estoppel: whether the party succeeded in persuading the court to accept their position.  Because no plan had been approved in the bankruptcy court before Plaintiff amended his schedules, it is not clear that Plaintiff succeeded in persuading the

---

[31]*Higgins v. Potter*, 416 F. App'x 731, 733–34 (10th Cir. 2011).

[32]*Id.* at 733.

[33]*Id.*

bankruptcy court to accept his misrepresentation. Although the court had held a meeting with the creditors on August 31, 2011, there is no evidence that the bankruptcy court took any action based on Plaintiff's statements in his schedule. Thus, the evidence suggests that the second element of the typical judicial estoppel test has not been met. Still, as an equitable doctrine, judicial estoppel requires a case-by-case analysis, and the court is not limited to the three-factor test used in *Eastman*.

Unfortunately, the Tenth Circuit has not yet determined whether a court may use judicial estoppel without a showing that Plaintiff succeeded in persuading a bankruptcy court to accept the earlier position because it has only addressed cases where that factor has been met. Other courts, however, have addressed this situation, and as acknowledged by the Colorado District Court in *Archuleta v. Wagner*[34] and noted by the Tenth Circuit in *Ardese v. DCT, Inc.*,[35] courts will generally not allow a plaintiff to avoid judicial estoppel by amending the bankruptcy filing in response to a motion for summary judgment based on judicial estoppel. In *Scoggins v. Arrow Trucking Co.*, for example, the court applied judicial estoppel even though it did not have any evidence of how far the bankruptcy proceeding had progressed.[36] The plaintiff argued that he could still amend the schedules, and the court asked the question: "should judicial estoppel apply nevertheless since [the plaintiff] is 'fessing up' only because his adversary exposed his omission?"[37] In examining that question, the court found that "[t]he answer arises from a review

[34]No. 06-cv-02061-LTB, 2007 WL 3119615, at *5 (D. Colo. Oct. 22, 2007).

[35]280 F. App'x 691, 696 (10th Cir. 2008) (citing *Archuleta*, 2007 WL 3119615, at *5, but declining to comment on the correctness of the line of cases).

[36]92 F. Supp. 2d 1372, 1375 (S.D. Ga. 2000).

[37]*Id.* at 1373–74.

of the judicial estoppel doctrine's central purpose."[38]   The court then explained that judicial

estoppel is used to prevent "'intentional self-contradiction as a means of obtaining an unfair

advantage'" and "'is directed against those who would attempt to manipulate the court system

through the calculated assertion of divergent sworn positions in judicial proceedings.'"[39]   The

court determined that even if Plaintiff could amend his schedules, "He knew the facts giving rise

to his inconsistent positions, and he had a motive to conceal this claim.  That is enough."[40]

Similarly, the court in *Traylor v. Ford, LLC* judicially estopped a plaintiff who only

amended his schedules in response to a summary judgment motion based on judicial estoppel.[41]

The court found that judicial estoppel was appropriate because the "plaintiff was attempting to

'play fast and loose with the system.'"[42] In *Archuleta*, the District of Colorado agreed with this

line of reasoning, but found that judicial estoppel did not apply in its case because the lawsuit

only arose *after* the plaintiff had filed her bankruptcy and the plaintiff amended her schedules

immediately after learning of her obligation and before the defendant filed for summary

judgment.[43]   Nonetheless, *Archuleta* suggests that in a case like the one before this Court—where

the plaintiff filed for bankruptcy after filing his civil lawsuit and only amended his bankruptcy

schedule in response to a summary judgment motion—judicial estoppel would be appropriate.[44]

---

[38]*Id.* at 1374.

[39]*Id.* at 1375 (quoting *Wolfork v. Tackett*, 526 S.E.2d 436, 440 (Ga. Ct. App. 1999)).

[40]*Id.* at 1376.

[41]185 F. Supp. 2d 1338, 1340 (N.D. Ga. 2002)

[42]*Id.*

[43]No. 06-cv-02061-LTB, 2007 WL 3119615, at *4 (D. Colo. 2007).

[44]*Id.* at *4.

And although the Tenth Circuit has not commented on the correctness of this line of cases,[45] the reasoning the Tenth Circuit used in *Eastman* equally applies here: "Allowing [the party] to 'back up' and benefit from the reopening of his bankruptcy would "suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them.""[46] Plaintiff knew of the facts giving rise to his inconsistent positions and he had motive to conceal the facts to keep this lawsuit out of reach of his creditors.  And Plaintiff did not voluntarily amend his schedules; he only did so after Defendant's motion for summary judgment on the basis of judicial estoppel.  Even after the summary judgment motion put Plaintiff on notice of his misrepresentations in the bankruptcy schedule, he did not inform the bankruptcy trustee of his lawsuit for nearly a month—his notice to the bankruptcy trustee was attached to the Response and dated the same date that the Response was filed.

Additionally, Plaintiff gave no explanation in his brief for his failure to include the lawsuit in the schedules other than saying: "Bankruptcies are often filed in haste to stop collection actions and schedules are routinely amended without leave of the court."[47]  Plaintiff did not go as far to say that *his* bankruptcy was filed in haste.  And Plaintiff presented no evidence or arguments at the June 1 hearing to explain his failure to include this lawsuit as an asset on his bankruptcy schedules.  Plaintiff filed his bankruptcy petition about six months after he filed this lawsuit.  Plaintiff thus knew about this lawsuit when filling out his bankruptcy

---

[45]In fact, in *Ardese*, the Tenth Circuit stated that it was not commenting on the correctness of this method of analysis.  280 F. App'x 691, 696 (10th Cir. 2008).

[46]*Eastman v. Union Pacific R.R.*, 493 F.3d 1151 (10th Cir. 2007) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)).

[47]Doc. 25 at 9.

schedules.  He has been represented by counsel in both cases and he is not an unsophisticated consumer—he has worked for a debt collection agency since 2004.  Indeed, the Court can make no reasonable inference from these facts to explain why Plaintiff left his recently filed FDCPA lawsuit off his schedules except that he was purposefully trying to hide the claim from the bankruptcy court.

Even more telling is the fact that Plaintiff failed to disclose Defendant as one of his creditors, which would have certainly resulted in the bankruptcy court becoming aware of this pending civil litigation.  Thus, Plaintiff did not just fail to include his claim on the schedules but also any other information that would allow the bankruptcy court or trustee to discover his claim.  And there is no dispute that Plaintiff knows Defendant is a creditor.  In his deposition, Plaintiff testified that he knew that Target National Bank transferred its debt to Defendant.  Yet, he listed Target National Bank as a creditor instead of Defendant.  And only a few days after Plaintiff gave this testimony in his deposition, the bankruptcy court held a meeting of the creditors in Plaintiff's bankruptcy case.  Still, Plaintiff did not inform the bankruptcy court or the trustee of his pending civil lawsuit.  Indeed, he only informed the trustee of the lawsuit in response to a motion for summary judgment based on judicial estoppel.

Based on the uncontroverted facts, the Court finds that no reasonable juror could come to any conclusion other than that Plaintiff's actions were a deliberate attempt to deceive the bankruptcy court and manipulate the judicial system to gain an unfair advantage over his creditors, including Defendant, which is exactly what judicial estoppel is designed to prevent.  Consequently, the Court finds application of judicial estoppel is appropriate, and the Court judicially estops Plaintiff from proceeding in this matter.  As Harvey Barker is the sole Plaintiff

12

in this action,[48] the Court grants Defendant's summary judgment on judicial estoppel grounds and need not discuss Defendant's arguments on the merits of the case.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: June 5, 2012

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[48]Plaintiff argued at the June 1 hearing that the bankruptcy trustee should not be estopped.  The bankruptcy trustee, however, is not a party to this action so that argument is irrelevant to this motion for summary judgment.